Fred T. Kelly v. Commissioner.
Kelly v. Commissioner
Docket No. 19014.
United States Tax Court
1949 Tax Ct. Memo LEXIS 7; 8 T.C.M. (CCH) 1108; T.C.M. (RIA) 49298; December 27, 1949
*7 James P. Hill, Esq., Atlantic National Bank Bldg., Jacksonville, Fla., for the petitioner. Newman A. Townsend, Jr., Esq., for the respondent. KERN determined a deficiency in petitioner's gift tax liability for 1944 in the amount of $11,386.88. Petitioner filed gift tax returns in connection with the transfer of one-half of his business to his wife, reporting a value of $25,982.11. Respondent determined the value of the gift to be $87,500, predicating this determination of value primarily upon the earnings of the company. By amended petition, petitioner places in issue the extent of the gift as well as the value of the gift, and claims an overpayment of his gift taxes for 1944. Findings of Fact Petitioner is Fred T. Kelly. He married his wife, Rebecca A. Kelly, prior to 1921. He owned and operated a wholesale floorcovering company entitled "F. T. Kelly Co.", as a sole proprietorship. In 1944, he transferred one-half of the business to the wife as a preliminary step in the formation of a partnership between husband and wife. Gift tax returns for 1944 reporting a gift to the extent of this transfer were filed with the collector of internal revenue for the district *8 of Florida. Prior to 1921 petitioner traveled and sold furniture and floor coverings for manufacturers on a commission basis. He found that he could also earn the dealer's carload discount if he purchased the furniture on his own behalf. Upon his marriage, petitioner's wife contributed $400 to the business, which doubled his working capital. She also assisted him in taking care of any mail or phone orders coming to their home. Petitioner incorporated his business in 1926 under the name of "Kelly Furniture Company." In 1930, the business discontinued the sale of furniture and ever since has operated solely as a wholesaler of floor coverings. The corporate name was also changed at this time to "F. T. Kelly Company." During the period of incorporation (1926-1936), there were fourteen shares of stock outstanding. Ten of these the petitioner owned. The remaining four shares were originally issued in the names of four other individuals; however, the certificates representing these shares were cancelled and a new certificate for these four shares was issued to petitioner's wife on December 24, 1936. The corporation was dissolved as of December 31, 1936. The wife was a vicepresident of *9 the corporation. The final minutes of the corporation ordering the dissolution stated: "The stockholders being the same as the Board of Directors, agreed to surrender their stock in the corporation for a proportionate share in partnership." The wife was not a "free dealer" under the laws of Florida, [1] and consequently no partnership agreement was entered into between petitioner and his wife for the conduct of the business. The taxable gain upon dissolution was reported by petitioner on his individual return. The business was thereafter conducted as a sole proprietorship from 1936 until 1944, the income from operations being reported by petitioner as his own. The wife at the same time owned other property and filed her own individual returns. Petitioner and his wife owned a joint bank account. In the operation of the business itself, petitioner dealt with ten or twelve manufacturers of floor coverings such as rugs, linoleum and asphalt tile. These products were purchased by petitioner. Two or three of these manufacturers had dealt with petitioner since the outset of his *10 business and the distribution of their products constituted the greater part of his business. As a result of personal friendship, petitioner had an understanding with these manufacturers that he would have exclusive sales rights as to their products in his district which consisted of approximately four-fifths of Florida and a substantial area in southern Georgia. Such agreements were not formal and were subject to cancellation at any time without notice. Petitioner's inventory, gross sales, and net income as reported were: As of December 31, Inventory
Gross Sales
Net Profit
1937
$101,787.10
$496,306.32
$32,889.48
1938
119,392.14
479,744.55
54,560.90
1939
141,795.10
601,504.76
56,831.38
1940
121,642.85
722,525.73
67,728.16
1941
132,919.32
744,872.08
73,219.71
1942
98,151.47
513,831.10
51,510.87
1943
34,827.07
622,907.09
68,376.33
1944 (Mar. 31)
10,149.54
1944
14,241.31
485,363.50
61,410.88
Sales were made to retailers by travelling salesmen. The products were well advertised by the manufacturer who also fixed the retail prices. Petitioner had no trademark and did no other advertising. The products were sold in the original *11 wrappings of the manufacturer. Petitioner's three salesmen of 1943, 1944, and 1945, who later became partners, were paid on a commission basis. Petitioner rented three warehouses where much of his business was done. Due to the war conditions, petitioner was able to operate with a rapid turnover in inventory and a consequent low overhead. Thus, comparatively high profits were made during the war years with a comparatively small capital investment required. Two of the warehouses were shut down during this period. Selling expenses, loss in accounts receivable, insurance, state and county taxes were all minimized during this period, whereas the price of the merchandise increased. The profits of these years were abnormal and do not reflect such earnings of the business as were reasonably to be anticipated at the time of the gift. In 1944, as of March 31, petitioner executed a deed of assignment, transferring a one-half, undivided interest in his business to his wife for ten dollars "and other good and valuable considerations." The assets of the business at this time were as follows: Current Assets
Accounts Receivable
$50,561.92
Cash in Bank
190.12
Inventory
10,149.54
Notes Receivable
1,000.00
Petty Cash
50.00
$61,951.58
Fixed Assets
Autos Less Depreciation
$ 203.70
Furniture & Fixtures Less
Dep.
203.14
406.84
$62,358.42
Liabilities
Accounts Payable
$ 9,002.07
C. G. Moody
545.36
W. H. Tucker
621.57
A. D. Yates
225.20
10,394.20
Net Worth
$51,964.22
*12 A gift tax return filed reported a gift of the value of $25,982.11. A partnership agreement of the same date executed by petitioner and his wife purported to create a partnership for the conduct of the same business. This agreement recited that the capital contribution of each was $25,982.11. Income tax returns were thereafter filed pursuant to this agreement. As of the time of the hearing herein, there was outstanding an uncontested determination of the Commissioner which denied the validity of the partnership for income tax purposes. Shortly before March, 1944, petitioner had received offers of sale of his business. One competitor desirous of the right to sell the lucrative line of goods sold by petitioner, offered to buy his business at book value less accounts receivable. This and other offers were rejected. In 1945 petitioner and his wife transferred a three-fourths interest in the business to his three salesmen by a deed similar to the deed of assignment to his wife in return for the payment to them of three-fourths the book value of the assets as of December 31, 1945, such payment to be made by the payment in cash of $5,000 and of the rest by promissory note. The book value *13 on this date was as follows: Current Assets
Accounts Receivable
$68,080.33
Cash in Bank
15,005.98
Inventory
11,509.14
Cash in Bank
50.00
Fred T. Kelly
20,540.38
Rebecca A. Kelly
15,545.95
$130,731.98
Liabilities
Accounts Payable
$ 2,967.34
2,967.34
Net Worth
$127,764.64
A partnership agreement then entered into between the salesmen and petitioner and his wife recited that each of the salesmen had contributed one-fourth of the capital to be used in the business, and that the remaining one-fourth was contributed one-half each by petitioner and his wife. Petitioner was designated as chief executive or managing partner. The earnings of F. T. Kelly Company were due primarily to the experience, ability, and personal qualifications of petitioner himself, and to certain exclusive sales arrangements which he maintained and exercised as a result of his acquaintanceship, and which were not assignable. The fair market value as of March 31, 1944, of the gift here involved was $25,982.11. Opinion KERN, Judge: Preliminary to his contention as to the proper valuation for gift tax purposes of the property interests transferred by petitioner to *14 his wife on March 31, 1944, petitioner contends that the wife owned a four-fourteenths interest in his business so that his later transfer to her was not subject to that extent to gift taxes. As we understand petitioner, this contention is predicated upon a claim that the wife owned fourfourteenths of the outstanding stock in 1936 when the predecessor corporation was dissolved, that she thereupon became equitably entitled to four-fourteenths of its assets, and that, therefore, there was consideration to this extent when he transferred one-half of the business formerly carried on by the corporation to her in 1944, the business having been run by him as a sole proprietorship in the interim. In our opinion, the evidence does not support this contention. With regard to the ultimate question as to the correct valuation of petitioner's gift for gift tax purposes, we have carefully considered the contentions of the parties in the light of the record before us, and have also considered the pertinent factors and criteria of value. As a result of such considerations we have arrived at the conclusion stated in our findings of fact. There is no deficiency in or overpayment of petitioner's *15 gift taxes for the year 1944; and a decision to that effect will be entered herein. Footnotes
1. See G.C.M. 2448, 6-2 C.B. 69↩; also Florida "Married Women's Emancipation" Act of 1943.